IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALLY GROS VEDROS, et al | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiffs, | : | |
| | : | |
| | : | Transferred from the Eastern |
| v. | : | District of Louisiana |
| | : | (Case No. 11-1198) |
| | : | |
| NORTHROP GRUMMAN SHIPBUILDING,: | | |
| Inc., et al | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:11-67281-ER |
| Defendants | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO J.                                    August 1, 2012

## I.    BACKGROUND

Plaintiff, Sally Gros Vedros, first filed suit in the Civil District Court for the Parish of Orleans, Louisiana, on October 28, 2010, alleging that Defendant CBS Corporation ("CBS"), Defendant Foster Wheeler, LLC ("Foster Wheeler"), and Defendant General Electric Company ("GE") (collectively, "Defendants") are liable for asbestos-related injuries suffered by her and her father ("Plaintiffs"). Plaintiffs claim that they were exposed to asbestos in connection with boilers and turbines supplied by Defendants to vessels built by Northrop Grumman Shipbuilding, Inc. (formerly known as Avondale Industries, Inc.,

1

formerly known as Avondale Shipyards, Inc.) [hereinafter "Avondale"].

On May 20, 2011, Defendants removed the case to federal court in the Eastern District of Louisiana based on a May 4, 2011, letter from Plaintiffs' counsel stating that the elder Vedros had "worked on all vessels present at Avondale . . . during his employment there" and that both Plaintiffs were "exposed to asbestos from all equipment present at Avondale . . . during their employments there." Letter from Pl.'s Counsel, Notice of Removal Ex. F, Vedros v. Northrop Grummann Shipbuilding, Inc., No. 11-1198, 2011 WL 2432955, at *1 (E.D. La. June 15, 2011) (emphasis added). On May 23, 2011, Plaintiffs filed a motion in the Eastern District of Louisiana to remand the case back to state court.[1] Mot. to Remand, Mot. to Set Mot. to Remand for Hr'g Ex. A, ECF No. 11 [hereinafter Mot. to Remand]. The motion to remand was stayed on June 15, 2011, pending the anticipated transfer of the case by the U.S. Judicial Panel on Multidistrict Litigation ("JPML"). The case

_____

[1]     Subsequently, Sally Vedros died of mesothelioma. The case was amended to substitute her children as plaintiffs ("Plaintiffs") and to assert survival and wrongful death damages on their behalf. Mem. Supp. Mot. 1, Pl's Mot. to Remand and Mot. to Strike Affs. Ex. A., ECF 22.

was transferred to the Eastern District of Pennsylvania on August 12, 2011.

On September 16, 2011, Plaintiffs filed a motion to set the stayed motion to remand for hearing by this Court. Mot. to Set Mot. to Remand for Hr'g, ECF No. 11 [hereinafter Second Mot. to Remand]. Plaintiffs attached their first motion to remand and supporting memorandum as exhibits to this motion. On September 21, 2011, Defendants each filed a memorandum opposing Plaintiff's second motion to remand.[2] Foster Wheeler Opp'n to Mot. to Remand, ECF No. 14; CBS Opp'n to Mot. to Remand, ECF No. 15; GE Opp'n to Mot. to Remand, ECF No. 16. On November 21,

---

[2]      Despite not being one of the parties that removed this case to federal court, Avondale filed a memorandum opposing Plaintiffs' second motion to remand with the Court on September 21, 2011. Avondale Mem. Opp'n to Second Mot. to Remand, Sept. 21, 2011, ECF No. 13 [hereinafter Avondale Mem.]. Avondale filed an identical memorandum in response to Plaintiffs' subsequent re-filing of their second motion to remand. Avondale Mem. Opp'n Mot. to Remand, Dec. 5, 2011, ECF No. 26; see infra p. 5. Avondale asserted that, like Defendants, Avondale acted under the direction of a federal officer and can assert the same colorable federal defenses against Plaintiffs' allegations as Defendants did. Avondale Mem. 2. In response, Plaintiffs filed a motion for leave of Court to file a reply memorandum to Avondale's memoranda on January 9, 2012. Mot. for Leave of Ct. to Reply, ECF No. 29. The Court considered the substance of Avondale's arguments and Plaintiffs' response in its disposition of Plaintiffs' motion to remand. However, in light of the outcome of Defendants' motion, and because Defendants raised similar arguments in their respective responses to Plaintiffs' motion to remand, the Court need not address Avondale's arguments separately.

2011, out of an abundance of caution, Plaintiffs re-filed their second motion to remand and filed a motion to strike the affidavits Defendants relied on for § 1442 removal, which included the entirety of the first motion to remand.[3] Mot. to Remand and Mot. to Strike Affs., ECF Nos. 22-25.

There are two issues before this Court. The first issue is whether Defendants timely removed this case from Louisiana state court to federal court within thirty days of it becoming removable pursuant to 28 U.S.C. § 1446(b). 28 U.S.C. § 1446(b) (2006). The second issue is, if removal was timely, whether Defendants properly satisfied the requirements of the federal officer removal statute pursuant to 28 U.S.C. § 1442(a)(1). 28 U.S.C. § 1442(a)(1). For the following reasons, the Court finds that the removal was timely, and that Defendants satisfied the requirements of the federal officer removal statute. Accordingly, the motion to remand will be denied.

---

[3]      Defendants filed a response to Plaintiffs' motion to strike on December 16, 2011. Mot. for Leave to File Opp'n to Pl.'s Mot. to Strike, ECF No. 28. In their motion, Plaintiffs claim that the factual allegations in the affidavits presented by Defendants in support of removal are inadmissible. Mot. to Remand and Mot. to Strike Affs. 43-44. However, this Court has held that the testimony presented by these affiants is admissible. See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010); Willis v. BW IP Int'l Inc., 811 F. Supp. 2d 1146, 1154-55 (E.D. Pa. 2011) (Robreno, J.). Thus, the Court will not strike the affidavits presented by Defendants.

## II.  MOTION TO REMAND

Plaintiffs contend that Defendants did not timely remove the case to federal court. They also contend that Defendants do not meet of any of the requirements that allow them to remove the case pursuant to § 1442(a)(1).[4] Defendants counter that the case only became removable in May 2011, not in November 2010, as Plaintiffs assert. Defendants also argue that they have met all of the requirements for removal under § 1442(a)(1). The matter is now ripe for disposition.

### A.   Timeliness of Removal

Plaintiffs move to remand this case to state court, arguing that Defendants did not timely file for removal after

---

[4]      Plaintiffs also contend that Defendants' petition for removal is defective because all of the defendants who were properly joined and served with Plaintiffs' initial petition for damages were not joined in the removal petition, rendering the removal defective. Pl.'s Mem. 4. This argument is unavailing because "every court of appeals to have considered the issue has decided that a federal officer or agency may unilaterally remove an entire case [including all other defendants] to federal court under § 1442, regardless of whether other defendants join in the removal notice." Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Finance Agency, No. 04-4770, 2005 WL 44524, at *2 (E.D. Pa. Jan. 10, 2005) (citing Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998)); Doe v. Kerwood, 969 F.2d 165, 168 (5th Cir. 1992); Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co., 644 F.2d 1310, 1314-15 (9th Cir. 1981); Bradford v. Harding, 284 F.2d 307, 310 (2d Cir. 1960); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998).

they were put on notice of a federal defense upon service of Plaintiffs' petition for damages in November 2010, in accordance with 28 U.S.C. §§ 1442 (a)(1) and 1446(b)(1). Mem. Supp. First Mot. to Remand 2-4, Pl.'s Mot. to Set Mot. to Remand for Hr'g Ex. B [hereinafter Pl.'s Mem.]. Plaintiffs contend that the petition for damages provided sufficient basis for removal, and, therefore, the thirty-day removal period started at the time Defendants were served with the petition.[5] Id.

Defendants counter that they were able to ascertain that Plaintiffs' alleged injuries might have been attributable to their work with Defendants' boilers and turbines aboard Navy ships only upon receipt of a letter from Plaintiffs' counsel on May 4, 2011. CBS Opp'n to Mot. to Remand 10; GE Opp'n to Mot. to Remand 10; Foster Wheeler Opp'n to Mot. to Remand 8. Defendants

---

[5]      The petition for damages states in several paragraphs that Plaintiffs were exposed daily to dangerously high levels of asbestos from Defendants' asbestos-containing equipment supplied to Avondale. Pet. for Damages ¶¶ 8-9, Mot. to Remand Ex. 1. It also alleges that Foster Wheeler was a "major manufacturer of boilers used in the construction of both commercial and U.S. Navy vessels." Id. ¶ 10. The petition for damages also states that Defendants were obligated to comply with "regulations of the U.S. Navy and the U.S. Maritime Commission" addressing the hazards of asbestos and which were promulgated in 1943. Id. ¶¶ 57, 69. It further alleges that the "U.S. Government issued advisories, through the U.S. Maritime Commission, to all government contractors regarding their findings of enumerated health risks in the work place." Id. ¶ 26.

contend that "the removal period is not triggered as to asbestos-related claims against a Navy equipment supplier until . . . Defendant[s are] provided with unequivocal notice of alleged exposure aboard a Navy ship to a type of product as to which [their] removal rights can be asserted." Id. Defendants assert they received such notice from the May 4, 2011, letter. Id.

       1.   Legal Standard

The timeliness of removal is an issue of federal law. 28 U.S.C. § 1442(a); In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d 736, 739 (E.D. Pa. 2011). In the context of a multidistrict litigation case, issues of federal law are governed by the law of the circuit in which the MDL court sits. Various Pls. v. Various Defs. (Oil Field Cases), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) ("[I]n cases where jurisdiction is based on federal question, this Court, as the transferee court, will apply federal law as interpreted by the Third Circuit."). Therefore, the Court applies Third Circuit precedent to determine whether or not Defendants' notice of removal was timely.

The federal officer removal statute provides that a notice of removal must be filed within thirty (30) days of a defendant's receipt of the initial pleading or, "[i]f the case

stated by the initial pleading is not removable," within thirty days after defendant's receipt of "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. §§ 1442(a)(1), 1446(b)(3). The thirty-day window for removal is triggered only when "the four corners of the pleading . . . inform[] the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." Foster v. Mut. Fire, Marine & Inland Ins. Co., 986 F.2d 48, 53 (3d Cir. 1993), rev'd on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999); In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d at 740. In Foster, the Third Circuit established that the analysis for determining whether the four corners of the pleading are sufficient is an objective one: "the issue is not what the defendant knew, but what the relevant document said." Foster, 986 F.2d at 53.

### 2.   Discussion

Plaintiffs cite to five paragraphs of the petition for damages filed in state court that Plaintiffs argue support the theory that their initial petition for damages gave Defendants sufficient notice to remove to federal court, thereby triggering the thirty-day removal period. See Pl.'s Mem. 3; supra note 6.

8

These paragraphs establish that: Plaintiffs worked for Avondale; they were exposed to asbestos while working daily on the equipment supplied to Avondale by Defendants; and Foster Wheeler was a major manufacturer of boilers used in both commercial and U.S. Navy vessels. Id. None of this information, however, is sufficient to show with "a substantial degree of specificity" that Plaintiffs were exposed to asbestos in connection with the equipment Defendants manufactured for U.S. Navy vessels (as opposed to only those manufactured for the private vessels) on Avondale's premises. See Foster, 986 F.2d at 53. It was not until Defendants received a letter[6] from Plaintiffs' counsel-- stating that Plaintiffs had worked on all vessels and were exposed to asbestos from all equipment at Avondale--that Defendants were able to ascertain that Plaintiffs' allegations related to exposure alleged to have occurred on U.S. Navy vessels, making the case removable. See 28 U.S.C. § 1446(b); CBS Opp'n to Mot. to Remand 10; GE Opp'n to Mot. to Remand 10; Foster Wheeler Opp'n to Mot. to Remand 8.

---

[6]     The Court need not consider whether this letter can be considered an "other paper" according to § 1446 (b).  What is relevant is that Defendants had no prior notice that Plaintiffs' claims were related to U.S. Navy vessels until they received the letter.

It is not necessary for a defendant to investigate a plaintiff's claim to determine whether there is or is not a federal defense. See Foster, 986 F.2d at 53. A defendant is required to consider only "the four corners of the pleading." Id. That is, "the issue is not what the defendant knew, but what the relevant document said." Id. (quoting Rowe v. Marder, 750 F. Supp. 718, 721 (W.D. Pa. 1990), aff'd, 935 F.2d 1282 (3d Cir. 1991)). Based on what Plaintiffs' initial petition for damages said, it would not have been possible for Defendants to have determined, without conducting further investigation, whether Plaintiffs had been exposed to asbestos from equipment provided for or installed aboard exclusively non-government vessels or whether they had been exposed to asbestos from equipment provided for or installed aboard U.S. Navy vessels. Simply stating, as Plaintiffs do in the petition for damages, that Defendants were obligated to comply with U.S. Navy and U.S. Maritime Commission regulations to address the hazards of asbestos does not specifically allege that Plaintiffs worked on U.S. Navy vessels. Rather, it suggests only that Defendants were bound to comply with these regulations for any U.S. Navy vessels present in Avondale regardless of whether or not Plaintiffs worked on or around equipment for those vessels. Thus, the removal period was not triggered for Defendants at the time they were served with Plaintiffs' petition for damages because the

causal nexus between Plaintiffs' claims and actions allegedly taken by Defendants under the direction of a federal officer had not yet been alleged.[7] In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d at 740.

Defendants first became aware that a colorable defense was available when they received a letter from Plaintiffs' counsel on May 4, 2011. Subsequently, on May 20, 2011, well within the thirty-day period which the federal officer removal statute allots, Defendants filed their petition for removal. Accordingly, Defendants' motion was timely.

B.   Federal Officer Removal

Plaintiffs move to remand this case to state court arguing that Defendants cannot properly invoke the federal

---

[7]       Plaintiffs argue further that Defendants have been involved in numerous cases involving asbestos-hazards from their equipment and that Defendants were well aware that this same equipment was used on vessels constructed for both the U.S. Navy and private entities. Pl.'s Mem. 3. These arguments are also unavailing because Defendants had no obligation to look beyond the four corners of Plaintiffs' petition for damages at that stage of the proceeding. See Foster, 986 F.2d at 53. Moreover, past cases in which Defendants were involved have no bearing on the present case. In this case, as stated above, it is not clear from the petition for damages whether Plaintiffs allege exposure to asbestos from equipment that was manufactured or supplied by Defendants for use aboard U.S. Navy vessels. The removal period is not triggered for asbestos-related claims against Navy suppliers until Defendants are provided with notice informing Defendants to a substantial degree of specificity of alleged exposure that took place aboard a Navy vessel.

officer removal statute because Defendants do not meet the
requirements to qualify as "person[s] acting under" a federal
officer. Pl.'s Mem 5. Plaintiffs also allege that Defendants
have no basis for removal under § 1442(a)(1) because: (1)
Defendants did not act pursuant to an officer's direct orders or
comprehensive and detailed regulations; (2) Defendants do not
have a colorable defense, that is, cannot invoke the government
contractor defense, because Defendants do not meet the
requirements set out in Boyle; and (3) there is no causal nexus
between Plaintiffs' claims and the acts Defendants performed
under color of federal office because the government did not
restrict Defendants from warning Plaintiffs about asbestos.
Pl.'s Mem. 15-23 (citing Boyle v. United Techs. Corp., 487 U.S.
500, 512 (1988)). Plaintiffs also argue that removal statutes
are to be strictly construed against removal and in favor of
remand. Id. at 3-5.

        Defendants argue that their removal under § 1442(a)(1)
is proper for both Plaintiffs' failure to warn claims and design
defect claims. CBS Opp'n to Mot. to Remand 11; GE Opp'n to Mot.
to Remand 11; Foster Wheeler Opp'n to Mot. to Remand 9. With
regard to Plaintiffs' design-defect claim, Defendants argue that
they meet all of the requirements set out in Mesa and Boyle,
thereby qualifying them for removal under § 1442(a)(1). CBS
Opp'n to Mot. to Remand 12-22; GE Opp'n to Mot. to Remand 12-22;

Foster Wheeler Opp'n to Mot. to Remand 10-20. In support of
this, Defendants provide testimony and affidavits[8] from experts
as to: (1) the Navy's direct and detailed control over the
design and manufacture of Defendants' equipment; (2) the fact
that the Navy developed or approved "reasonably precise
specifications" for Defendants' equipment, the equipment
conformed with such specifications (allowing Defendants to meet
the requirements for the government contractor defense), and
Defendants did not fail to warn the Navy of an unknown hazard;
and (3) a causal nexus exists between Defendants' conduct under
color of its federal office as Navy contractors and Plaintiffs'
claim.

Plaintiffs' motion will be assessed in light of the
above allegations and legal principles as well as the four
required elements for removal under § 1442(a)(1) as outlined in

---

[8]      The evidence put forth by Defendants in favor of
removal comes from the affidavits of: James Gate, a former CBS
employee from 1953 to 1994, and retired U.S. Navy Rear Admiral
Roger B. Horne, Jr. who served in the Navy from 1956 to 1991
(for CBS); David Hobson, a former GE employee from 1969 to 1996,
and retired U.S. Navy Rear Admiral Ben J. Lehman who served in
the Navy from 1942-1982 (for GE); and J. Thomas Schroppe, a
former Foster Wheeler employee from 1962 to 1999, and retired
U.S. Navy Rear Admiral Ben J. Lehman who served in the Navy from
1942-1982 (for Foster Wheeler) (collectively, "Affiants"). See
CBS Opp'n to Mot. to Remand Ex. A [hereinafter Gate Aff.]; GE
Opp'n to Mot. to Remand Ex. A [hereinafter Hobson Aff.]; and
Foster Wheeler Opp'n Mot. Ex. A [hereinafter Schroppe Aff.].

Hagen and whether Defendants correctly asserted the government contractor defense as a colorable defense. Hagen, 739 F. Supp. 2d at 776 (citing Feidt v. Owens Corning Fiberglass Corp., 153 F.3d 124, 127 (3d Cir. 1998)); see also Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 124-25, 131-35 (1989).

When removal is based on the federal officer removal statute, a court must broadly construe the defendant's ability to remove to avoid frustrating the underlying policy of having "the validity of the defense of official immunity tried in a federal court." Willingham v. Morgan, 395 U.S. 402, 407 (1969); see also Arizona v. Manypenny, 451 U.S. 232, 242 (1981). Therefore, proper jurisdiction under § 1442 exists where the defendant invoking the statute identifies evidence which, viewed in the light most favorable to the defendant, would support a complete defense at trial. Hagen, 739 F. Supp. 2d at 778.

A party seeking removal under the federal officer removal statute, § 1442(a)(1), must demonstrate that: (1) it is a "person" within the meaning of the statute; (2) plaintiff's claims are based upon the defendant's conduct "acting under" a federal officer; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and conduct performed under color of a federal office. Hagen, 739 F. Supp.

2d at 776 (citing Feidt, 153 F.3d at 127); see also Jefferson
Cnty., 527 U.S. at 431; Mesa, 489 U.S. at 124-25, 131-35.

The evidence proffered by Defendants, when viewed in
the light most favorable to Defendants, satisfies the
requirements of the federal officer removal statute. A
heightened standard of proof is not appropriate at this stage of
the proceedings. See Willingham, 395 U.S. 492 at 407 (stating
that "[a]n officer need not win his case before he can have it
removed"); Hagen, 739 F. Supp. 2d at 785.

1. A "Person" Acting Under the Direction of a
Federal Officer

a. Legal standard

To be considered to have "act[ed] under" a federal
officer, a "person" must have done more than merely complied with
a federal legal or regulatory scheme.[9] Watson v. Phillip Morris
Cos., 551 U.S. 142, 152 (2007). Rather, an entity "acts under" a
federal officer when it "assist[s], or [helps to] carry out, the
duties or tasks of the federal superior." Id. This necessary
relationship exists when defendant's "actions that led to the

---

[9]     Section 1442(a)(1) states that an action is removable
when "any officer (or any person acting under that officer)
of the United States or of any agency thereof, [is sued for] any
act under color of such office." Defendants here fit the
description of a "person acting under" a federal officer.

lawsuit were based on a federal 'officer's direct orders or comprehensive and detailed regulations.'" <u>Hagen</u>, 739 F. Supp. 2d at 784 (quoting <u>Good v. Armstrong World Indus., Inc.</u>, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)).

b.   <u>Discussion</u>

Defendants' "actions that led to the lawsuit [should be] based on a federal 'officer's direct orders or comprehensive and detailed regulations[]'" in order to be considered "acting under" a federal officer. <u>Hagen</u>, 739 F. Supp. 2d at 784. Defendants provide affidavits from Affiants asserting that they were acting under the direction of a federal officer or agency because their contracts with the U.S. Navy did not allow them to deviate from the government-issued military specifications. <u>See</u> Gate Aff. ¶¶ 3-7, 15; Hobson Aff. ¶¶ 3, 8-10, 17; Schroppe Aff. ¶¶ 2-7. Defendants' have provided evidence that their equipment was manufactured in compliance with detailed specifications and other technical documentation requiring the use of asbestos as dictated by the U.S. Navy and U.S. Maritime Commission. <u>See</u> <u>Hagen</u>, 739 F. Supp. 2d at 784; Gate Aff. ¶¶ 7, 10-17; Horne Aff. ¶ 9-19; Hobson Aff. ¶¶ 10-12, 19; Lehman Decl. ¶¶ 3-4; Schroppe Aff. ¶¶ 8-9, 13; Lehman Aff. ¶¶ 2-4, 13. Affiants also state that the equipment manufactured by Defendants for the Navy was monitored by the Navy on an ongoing basis and that the equipment

16

was subject to Navy inspection, testing, and approval. See id.;
see also Fung v. Abex Corp., 816 F. Supp. 569, 572-73 (N.D. Cal.
1992).

Plaintiffs counter that Defendants' equipment is built
and sold as "off the shelf" items that adhere to both commercial
and government vessel standards of construction. See CBS and GE
Opp'n to Mot. to Compel, Pl.'s Memo Ex. 4. However, taken in the
light most favorable to Defendants, the affidavits provided by
Defendants support a finding that they were operating under very
comprehensive and detailed instructions from the Navy, such that
their actions were in adherence with a federal officer's
"comprehensive and detailed regulations." Hagen, 739 F. Supp. 2d
at 784. Accordingly, Defendants fulfill the "acting under"
requirement for § 1442(a)(1) removal.

       2.    Colorable Defenses: the Government
              Contractor Defense

       a.    Legal standard

Federal officers, and their agents, may remove cases
based on acts performed under color of their federal office if
they assert a colorable federal defense:

> A civil action or criminal prosecution commenced in a
> State court against any of the following may be
> removed by them to the district court of the United
> States for the district and division embracing the
> place wherein it is pending:
>
> (1) The United States or any agency thereof or
> any officer (or any person acting under that officer)

17

of the United States or of any agency thereof, sued in
an official or individual capacity for any act under
color of such office . . . .

28 U.S.C. § 1442(a); Mesa, 489 U.S. at 129.

A defendant may raise a government contractor defense
to satisfy the colorable defense component (prong three) of §
1442(a)(1). The government contractor defense displaces state
law where "(1) the United States approved reasonably precise
specifications; (2) the equipment conformed to those
specifications; and (3) the supplier warned the United States
about the dangers in the use of the equipment that were known to
the supplier but not to the United States." Boyle, 487 U.S. at
512. The Boyle decision applied the government contractor
defense to a design defect products liability claim, but it has
since been extended to failure to warn products liability
claims. See, e.g., Hagen, 739 F. Supp. 2d at 783; Tate v. Boeing
Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995) (recognizing a
distinction between applying the government contractor defense
to design defect claims and failure to warn claims, but holding
"the rationale for applying the government contractor defense to
a failure to warn claim tracks the Boyle analysis closely"). In
the context of failure to warn claims, a defendant must set
forth evidence that the government's approval "transcend[ed]
rubber stamping" for the defense to shield a government

contractor from liability. <u>Hagen</u>, 739 F. Supp. 2d at 783; <u>Tate</u>, 55 F.3d at 1156-57.

However, at the motion to remand stage, the Court is not required to "determine credibility, weigh the quantum of evidence or discredit the source of the defense." <u>Hagen</u>, 739 F. Supp. 2d at 782. Instead, "[i]t is the sufficiency of the facts stated--not the weight of the proof presented--that matters[]" in determining whether the defense is colorable. <u>Id.</u>; <u>see also Jefferson Cnty.</u>, 527 U.S. at 431 (citing <u>Willingham</u>, 395 U.S. at 407 (noting that the court does not require that the party win the case prior to removal)).

b.   <u>Discussion</u>

In this case, Defendants raise a government contractor defense to meet the "colorable defense" prong of the <u>Boyle</u> test. The affidavits submitted by Defendants, as discussed above, assert that Defendants manufactured equipment not only pursuant to contracts with the U.S. Navy, but also in strict compliance with comprehensive and detailed specifications prepared and approved by the government. <u>See</u> Gate Aff. ¶¶ 7, 10-17; Horne Aff. ¶¶ 10-20; Hobson Aff. ¶¶ 10-12; Lehman Decl. ¶¶ 4-7; Schroppe Aff. ¶¶ 2-9, 13-21; Lehman Aff. ¶¶ 5-10.

Affiants also presented evidence pertaining to the second § 1442(a)(1) requirement outlined in <u>Mesa</u>. The U.S. Navy

and the U.S. Maritime Commission inspected the equipment to ensure compliance with the military specifications. <u>See</u> Gate Aff. ¶¶ 18-28; Horne Aff. ¶ 20; Hobson Aff. ¶¶ 12-18; Lehman Decl. ¶¶ 6-7; Schroppe Aff. ¶¶ 13-21; Lehman Aff. ¶¶ 3-4. Defendants provide evidence that had their equipment not strictly complied with any of these specifications, the equipment would not have been accepted by the U.S. Navy and Defendants would have been required to rework the equipment in order to comply with the specifications. <u>See</u> Gate Aff. ¶ 24; Horne Aff. ¶¶ 20-21; Hobson Aff. ¶ 17; Lehman Decl. ¶ 7; Schroppe Aff. ¶¶ 19-20; Lehman Aff. ¶ 5. Affiants state that Defendants were obligated to and did comply with the Navy's specifications. Accepting the affidavits as true for purposes of deciding Plaintiffs' motion, the Navy maintained complete control and discretion over the design specifications of each ship, and the equipment Defendants supplied to the Navy conformed to those specifications, as demonstrated by the Navy's acceptance of the equipment. This evidence is sufficient to satisfy the first two elements of the government contractor defense.[10]

_____

[10]     For the sake of completeness, the Court notes that Defendants' evidence is also sufficient to satisfy the first two elements of § 1442(a)(1) with respect to Plaintiffs' failure to

Defendants also satisfy the third prong of the <u>Boyle</u> test. The defense, according to <u>Boyle</u>, does not require the government contractor to warn the government where the government knew as much or more than the government contractors about the hazards of the product. <u>Hagen</u>, 739 F. Supp. 2d at 784. Affiants state that the Navy had state-of-the-art knowledge about the hazards of asbestos and the special needs of combat vassels. Horne Aff. ¶¶ 25-27, 37; Lehman Decl. ¶ 8; Lehman Aff. ¶ 7.

There is nothing in the record indicating that Defendants knew more about the asbestos hazards of the equipment they manufactured for the government than the United States knew at the time. Affiants note that the U.S. Navy was aware of the hazards associated with asbestos, but did not believe these hazards outweighed the beneficial aspects of asbestos from an

---

warn claims. The detailed specifications Defendants adhered to also contained instructions on whether and how any markings would be placed on the equipment Defendants manufactured. <u>See</u> Gate Aff. ¶¶ 30-31, 33; Horne Aff. ¶¶ 28-32; Hobson Aff. ¶¶ 22, 24; Lehman Decl. ¶¶ 8-9; Schroppe Aff. ¶ 22; Lehman Aff. ¶¶ 10-14. According to the affidavits, Defendants were not permitted to include any instructions or warnings because the Navy controlled the decision-making with respect to instructions and warnings on every piece of equipment. <u>Id.</u> This evidence, when viewed in light most favorable to Defendants, clearly demonstrates that the Navy was responsible for any alleged lack of warnings, not Defendants.

engineering standpoint. Forman Aff. ¶ 32-35, CBS Opp'n to Mot. to Remand Ex. 7; Horne Aff. ¶¶ 25-28; Lehman Decl. ¶¶ 8; Lehman Aff. ¶¶ 13-14. At this stage, Defendants are not required to prove that the Navy knew or had superior knowledge about the hazards of asbestos. Affiants' uncontroverted statements are enough to support a finding that the defense is plausible. See Hagen, 739 F. Supp. 2d at 784 (ruling that the court is not required to "determine credibility, weigh the quantum of evidence, or discredit the source of the defense"). Accordingly, Affiants' statements satisfy the third prong of the government contractor defense, and Defendants have established a colorable defense.

> 3.   Causal Nexus Between the Claims and Conduct Performed Under Color of a Federal Office

> > a.   Legal standard

Finally, in order for a defendant to demonstrate a causal nexus between the conduct performed under color of federal office, the defendant must "by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty." Mesa, 489 U.S. at 131-34 (quoting Maryland v. Soper, 270 U.S. 9, 33 (1926)). In Hagen, this Court held that the causal nexus requirement becomes redundant where a "defendant in a government contractor case makes out a colorable federal defense" because

the causal nexus analysis "is essentially the same [as that associated with] the colorable defense requirement." Hagen, 739 F. Supp. 2d at 785 (quoting Prewett v. Goulds Pumps (IPG), No. 09-0838, 2009 WL 2959877, at *7 (W.D. Wash. Sept. 9, 2009)).

b.   Discussion

As demonstrated above, Defendants have a colorable federal defense that any design defect products liability or failure to warn claims are a direct result of the Navy's extensive supervision and control over the products Defendants manufactured for Navy use. Therefore, a causal connection exists because the liability Defendants face arises from the duties they performed in compliance with valid government contracts.

The evidence set forth in Defendants' affidavits, when viewed in the light most favorable to Defendants, satisfies all of the necessary requirements laid out in Mesa for removal under § 1442(a)(1). Accordingly, Plaintiffs' motion to remand is denied.

III. CONCLUSION

For the reasons stated above, Plaintiffs' motion to set a hearing for the second motion to remand (ECF No. 11) will be denied, as will Plaintiffs' re-filed second motion to remand and motion to strike affidavits (ECF No. 22).